AO 91 (Rev. 11/11)  Criminal Complaint (approved by AUSA Seth Schlessinger)

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| | |
|---|---|
| United States of America<br>v.<br>Christian Brennan<br><br>*Defendant(s)* | Case No. 18-1175-M |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __12/14/16 - 7/20/18__ in the county of __Bucks__ in the __Eastern__ District of __Pennsylvania__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(g) | Engaging in Child Exploitation Enterprise. |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Daniel J. Johns, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 07/20/2018

_____
*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Lynne A. Sitarski, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Daniel J. Johns, being first duly sworn, hereby depose and state as follows:

1. I am employed as a Special Agent of the Federal Bureau of Investigation (FBI) in Philadelphia, Pennsylvania. I am thus a "federal law enforcement officer," as defined by the Federal Rules of Criminal Procedure. I have been employed as a Special Agent since March 2007. I am presently assigned to the Philadelphia Division's Crimes Against Children squad, which investigates sex trafficking of children and prostitution investigations, child pornography, and kidnappings, among other violations of federal law. I have gained experience through training at the FBI Academy, various conferences involving crimes against children, and everyday work related to conducting these types of investigations.

2. This affidavit is being made in support of the issuance of the attached criminal complaint charging Christian BRENNAN with engaging in a child exploitation enterprise, in violation of Title 18, United States Code Section 2252A(g).

3. The statements in this Affidavit are based in part on my investigation of this matter and on information provided by other law enforcement officers. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause in support of issuance of the attached complaint, I have not included each and every fact known to me concerning this investigation, but rather only those facts that I respectfully submit are necessary in order to establish probable cause.

## STATUTORY AUTHORITY

4. Title 18, United States Code, Section 2252A(g) prohibits any person from engaging in a child exploitation enterprise. In turn, Title 18, United States Code, Section 2252A(g)(2)

1

provides that a person engages in a child exploitation enterprise within the meaning of the section if the person violates (among other portions of Title 18) Chapter 110 of the United States Code, as part of a series of felony violations constituting three or more separate incidents and involving more than one victim, and commits those offenses in concert with three or more other persons. Chapter 110 of the United States Code prohibits, among other offenses, the production of child pornography (18 U.S.C. § 2251(a)); the advertisement of child pornography (18 U.S.C. § 2251(d)); the distribution or receipt of child pornography (18 U.S.C. § 2252(a)(2)); and the possession of child pornography (18 U.S.C. § 2252(a)(4)(B)). Each of the aforementioned violations is a felony offense.

## PROBABLE CAUSE

5. On or about May 23, 2017, an FBI online covert employee (OCE) was investigating the production of child pornography on the mobile app "live.me"[1] and browsed to a website called "8ch.net." On 8ch.net, the OCE observed a link to an URL permitting browser-based access to Service A, a computer-based communication service described further below. Next to the link was an image that depicted two females who appeared to be children wearing bikinis.

6. The OCE clicked on the above link and was re-directed to another URL to a website operated by Service A.[2] This particular website was entitled "Service A-1," and the title was accompanied by a thumbnail image of two minor female children kissing each other.

---

[1] Live.me is a social media platform for sharing, creating and viewing live streaming videos. Live.me users can stream live video from mobile platforms like Apple iOS or Google Android. Videos streamed from Live.me users can be viewed through the Live.me mobile applications or an internet browser.

[2] Service A, Service A-1, and similar terms, as well as Username 1 and similar terms, are pseudonyms used in this affidavit in lieu of the actual terms in order to protect the integrity of an ongoing investigation.

7. Service A owns and operates a free-access all in one voice and text chat application and website with the same name that can be accessed over the web. A user creates a Service A account and then can communicate with other Service A users.

8. Service A users can exchange private messages between each other, participate in chat discussions, and voice chat. Service A users can also create chat rooms, which functions as message boards that can be accessed only by Service A users who have an invitation link. Service A-1, mentioned above, is one such chat room on Service A. Within these chat rooms, users can set up different sub-rooms wherein users can type written text, including links to files stored on external file-storage sites, and also upload files under a particular size limit, which can be viewed by all users of the sub-room. Service A users can share files larger than the limit allowed by providing hyperlinks to file sharing websites. Service A chat rooms can have one or more moderators. Moderators have the ability to manage other users, including but not limited to removing users from the chat rooms, elevating users hierarchically, and granting users additional permissions. The moderators of a chat room can categorize users of the chat rooms into hierarchical groups with customized labels and can configure those groups to give users in each group different levels of access.

9. The OCE's review of the Service A-1 chat room revealed that the vast majority of its content consisted of discussions about using web cameras and social-media applications to obtain sexually-explicit images and videos of minor children; images and videos of minor children exposing their vaginas, which at times were uploaded to the Service A-1 chat room and its sub-rooms; and links to download child pornography images and videos from external file-storage sites. Most of the children viewed by the OCE appeared to be approximately between the ages of 11 and 17 years old. The Service A-1 page also included some discussion of adults engaging in

sexual activity via web camera. However, the majority of the activity focused on the depiction of minors engaged in sexually explicit activity on web cameras. For example, in the course of a discussion in the one sub-room of Service A-1 regarding the merits of utilizing virtual private network (VPN) technology to mask users' IP address and identity, Username 1 commented on April 15, 2017: "Just the fact that we're all hanging in here, which is a chatroom where underaged sexual content is shared around is enough reason for one to get a VPN." User name 1 continued, stating: "Fuck when you download something from dropfile Your ISP can see what you downloaded What if govt authorities read ISPs logfiles."

10. Based on the OCE's undercover observations on Service A-1, a federal search warrant was issued, on or about July 10, 2017, by the Honorable David R. Strawbridge, United States Magistrate Judge, Eastern District of Pennsylvania, for content stored on Service A's servers related to Service A-1. In response to the search warrant, Service A disclosed to law enforcement officers IP address information for some users of Service A-1, the content of some text chats occurring on Service A-1, and some private messages sent by users of Service A-1.

11. The Service A-1 chat room was ultimately shut down by Service A. Members of the Service A-1 chat room proceeded to open additional similar chat rooms on Service A, including: Service A-2, Service A-3, Service A-4, and Service A-5. The OCE gained access to Service A-3, Service A-4, and Service A-5. The OCE observed each of these chat rooms contained many of the same users as Service A-1 and were operated for the purpose of discussing, obtaining, and distributing child exploitation material including child pornography files. Service A-5 is the only of the aforementioned Service A chat rooms that is still operating.

12. Based on the OCE's undercover observations on Service A-2, Service A-3, Service A-4, and Service A-5, a second federal search warrant was issued, on or about November 17, 2017,

4

by the Honorable Linda K. Caracappa, Chief United States Magistrate Judge, Eastern District of Pennsylvania, for content stored on Service A's servers related to the aforementioned chat rooms. In response to the search warrant, Service A disclosed to law enforcement officers IP address information for some users of those chat rooms, the content of certain text chats occurring in the chat rooms, and some private messages sent by users of those chat rooms.

13. The OCE observed a user of Service A-1 using the online name "Username 3." A review of the search warrant return from Service A and undercover recordings by the OCE revealed, among other activity, the following activity, each involving a video or image that I have reviewed and that, in my opinion, constitutes a depiction of a minor engaged in sexually explicit conduct as defined by federal law: :

    a. On May 15, 2017, Username 3 posted on Service A-1:

*"Can anyone up this one from LillyXD [HYPERLINK REDACTED]"*

The OCE clicked on this hyperlink, which downloaded a video file that depicted two minor female children who appeared to be under the age of 12. One of the minor female children exposed her vagina to the camera. The minor female children also simulated sex with each other while wearing their clothing.

    b. On December 14, 2016, Username 3 posted on Service A-1:

*"if i have this can you still get the m3u8[3]? [HYPERLINK REDACTED]"*

The posted link contained a twenty-digit live.me video ID ending in -8235. Based upon my training, experience and another FBI agent's review of several thousand live.me video files

---

[3] "m3u8" refers to a download link for live.me. The download links utilized the file extension m3u8. An m3u8 file extension indicates it is being utilized for HTTP live streaming or HLS. In this instance, Service A-1 users and the users of other chat rooms would provide hyperlinks to download and access live.me files, which commonly ended in the file extension m3u8.

5

downloaded directly from live.me servers, I know live.me video files are identified with a twenty-digit video ID as part of the file name. The video ID uniquely identifies a video file created on live.me servers. A file with the same video ID in the title was located on a cooperating defendant's digital media devices within the folder "streaming sites" and in sub folder "live.ly and .me" and was labeled "Savage squad-XXXXXXXXXXXXXXXX8235.mp4." In a statement to FBI agents, the cooperating defendant stated that the parent folder "streaming sites" contained content from several streaming websites, which he had obtained from various Service A chat rooms. The cooperating defendant said he downloaded most of his content from Service A-1 because it was the most active. An FBI agent reviewed the above-described .mp4 file, and it depicted a minor female exposing her vagina and inserting a toothbrush into her vagina.

      c.      On October 7, 2017, Username 3 posted a link to an .mp4 video file on Service A-5. The OCE downloaded and reviewed the file, which depicted what appeared to be a minor female inserting a curling iron into her vagina. The female had developed breasts and pubic hair. Per the aforementioned cooperating defendant, users of Service A-1, Service A-5 and similar chat rooms were generally interested in female children who had reached puberty, but were under 18 years of age.

      d.      On October 26, 2017, Username 3 posted an image on Service A-5. The image depicted a naked minor female who appeared to be between 12 and 14 years old, with a hair brush inserted into her vagina.

14.      On December 12, 2017, Username 3 engaged in a discussion with two other Service A-5 users. The discussion focused on the fact that video-streaming platform live.me had increased

6

its moderation efforts leading to "less win."[4] One of the other Service A-5 users stated: "Well when I'm in the liveme mines I find tons of 18+" Username 3 and the other user responded to this comment by posting a thumbs down emoji and a vomiting face emoji.

15. On November 25, 2017, another Service A-5 user told other users that a minor female was not 13 to 14 years old as they had believed, but was actually 12 years old. Username 3 responded stating that the minor female "isn't 12.. I need skype proof."

16. Records from Service A show that Username 3 accessed Service A servers using a particular IP address from January 2017 to September 2017. The FBI sent a subpoena to Comcast Communications who responded on October 12, 2017. Comcast Communications' records showed that the subscriber of the IP address at the relevant times was Lilian Brennan at 13217 96th Avenue Ct. E, Puyallup, WA 98373.

17. On July 20, 2018, a federal search warrant was executed at 13217 96th Avenue Ct. E, Puyallup, WA, CHRISTIAN BRENNAN's residence. CHRISTIAN BRENNAN was present at the time of the search, and voluntarily agreed to be interviewed by law enforcement officers. BRENNAN acknowledged that he used Service A, and specifically that he had participated in Service A-5. BRENNAN acknowledged that he used Username 3 to access Service A-5. BRENNAN admitted that he both distributed and received child pornography through his participation in Service A. BRENNAN provided a detailed description of the means by which he would obtain child pornography material through .m3u8 links posted on Service A. BRENNAN informed law enforcement officers that depictions constituting child pornography were located on his digital devices and would be found by investigators searching those devices. A forensic

---

[4] "win" as used here refers to successfully obtaining live streaming video in which the user removes his or her clothing or performs a sexual act while being recorded.

preview of digital devices belonging to BRENNAN conducted at the site of the search confirmed that depictions of minors engaged in sexually explicit conduct were located on BRENNAN's devices. For example, one of the video files recovered from a device that BRENNAN admitted belonged to him depicted a minor female, appearing to be approximately 13 to 15 years of age, entering a shower naked before facing the camera and beginning to masturbate.

## VENUE

18. The child exploitation enterprise in which BRENNAN engaged, as described above, extended at all relevant times to the Eastern District of Pennsylvania. The enterprise was open to members from anywhere in the world, and the child pornography material disseminated by the enterprise was made available to any person able to access Service A, including from the Eastern District of Pennsylvania. Further, the OCE's activities over the various Service A chat rooms comprising the enterprise were conducted in the Eastern District of Pennsylvania. Finally, the investigation has revealed the participation of at least one member of the enterprise who lived in the Eastern District of Pennsylvania and participated in the enterprise from the Eastern District of Pennsylvania, from as early as July 2016 until that member's arrest by federal authorities in February 2018.

## CONCLUSION

19. Based upon the information above, I respectfully submit that there is probable cause to believe that CHRISTIAN BRENNAN engaged in a child exploitation enterprise, in violation of Title 18, United States Code Section 2252A(g), in that BRENNAN violated Chapter 110 of Title 18 of the United States Code as part of a series of felony violations involving three or more separate incidents and more than one victim, and has committed those offenses with three or more other

persons. I therefore further respectfully request that the Court issue the attached complaint and warrant charging CHRISTIAN BRENNAN with that offense.

_____
Daniel J. Johns
Special Agent, Federal Bureau of Investigation

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 20th DAY
OF JULY, 2018.

_____
HON. LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE

9